UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
CENTRAL ISLIP DIVISION

| | |
|---|---|
| Michael Schirano, and Gadi Flores, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>Milberg Coleman Bryson Phillips Grossman, LLC, Milberg Coleman Bryson Phillips Grossman, PLLC and Douglas H. Sanders Law Group, PLLC,<br><br>Defendants. | CASE NO.<br><br>CLASS ACTION COMPLAINT<br><br><u>JURY TRIAL DEMANDED</u> |

**Nature of this Action**

1. Michael Schirano and Gadi Flores ("Plaintiffs"), individually and on behalf of all others similarly situated, bring this class action against Milberg Coleman Bryson Phillips Grossman, LLC ("Milberg LLC"), Milberg Coleman Bryson Phillips Grossman, PLLC ("Milberg PLLC") (collectively, "Milberg"), and Douglas H. Sanders Law Group, PLLC (collectively, "Defendants") under the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA").

2. In response to a mass tort multi-district litigation matter involving toxic exposure surrounding Marine Corps Base Camp Lejeune, numerous entities, including Defendants, appear to be engaging in mass telemarketing and robocalling campaigns to broad swathes of the United States, in apparent disregard of the TCPA.

3. These mass solicitations are being conducted with total disregard to the recipients' status on the National Do-Not-Call Registry ("DNC Registry"), all while deliberately obfuscating the identity of the sender.

4. As a result, upon information and good faith belief, Defendants routinely violate 47

1

U.S.C. § 227(c)(5) and 47 C.F.R. § 64.1200(a)(2) by delivering more than one advertisement or marketing text message to residential or cellular telephone numbers registered with the DNC Registry without the prior express invitation or permission required by the TCPA.

5. Additionally, upon information and good faith belief, Defendants routinely violate 47 U.S.C. § 227(c)(5) and 47 C.F.R. §§ 64.1200(d)(6) by delivering more than one advertisement or telemarketing message to residential or cellular telephone numbers while failing to identify "the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted."

6. Lastly, upon information and good faith belief, Defendants routinely violate 47 U.S.C. § 227(b)(1)(A)(iii) by using an artificial or prerecorded voice in connection with non-emergency calls they placed, or caused to be placed, to Plaintiffs' cellular telephone numbers, without prior express consent.

**Parties**

7. Mr. Schirano is a natural person who at all relevant times resided in West Islip, New York.

8. Mr. Flores is a natural person who at all relevant times resided in Fort Wayne, Indiana.

9. Milberg PLLC, a Tennessee professional limited liability company, is a national law firm that practices, among other things, mass tort litigation.

10. Milberg PLLC is headquartered in Tennessee, with offices in New York, London, California, Illinois, Georgia, Mississippi, Washington, Washington D.C., Florida, North Carolina, South Carolina, Kentucky, and Puerto Rico.

11. Milberg LLC, a Puerto Rico limited liability company, is a law firm that practices,

among other things, mass tort litigation.

12.    Douglas H. Sanders Law Group, PLLC, a New York professional service limited liability company, is a law firm headquartered in Garden City, New York.

## Jurisdiction and Venue

13.    This Court has subject matter jurisdiction under 47 U.S.C. § 227(c)(5) and 28 U.S.C. § 1331.

14.    Venue is proper before this Court under both 28 U.S.C. § 1391(b)(2) because a significant portion of the events giving rise to this action occurred in this district.

15.    In particular, Defendants sent, or caused to be sent, the violative text messages to Mr. Schirano's telephone in this district, and Mr. Schirano received Defendant's text messages in this district.

## Factual Allegations

16.    Mr. Schirano is—and has been for approximately 12 years—the regular and sole user of his cellular telephone number—(631) 935-XXXX.

17.    Mr. Schirano registered his telephone number with the National Do Not Call Registry in or around November 2022.

18.    Likewise, Mr. Flores is—and has been for over a year—the regular and sole user of his cellular telephone number—(260) 437-XXXX.

19.    Mr. Flores's telephone number has been registered with the National Do Not Call Registry since around November 2004.

20.    Mr. Flores's former telephone number was registered on the National Do Not Call Registry, so after acquiring his (260) telephone number, Mr. Flores checked and confirmed that his number was registered on the National Do Not Call Registry.

21. Plaintiffs use their cellular telephones as their personal residential telephone numbers.

22. Beginning in or around November 2022, Plaintiffs began receiving a series of text messages from a rotating series of phone numbers, attempting to solicit Plaintiffs to submit a claim regarding the pending Camp Lejeune water contamination mass tort litigation.

23. In response to these numerous unwanted telephone calls and messages, Mr. Schirano registered his cellular telephone number with the DNC Registry on November 1, 2022.

24. However, Mr. Schirano continued to receive unwanted telephone calls and text messages.

25. For example, Mr. Schirano received the following text messages to his cellular telephone number:



26. Mr. Schirano attempted to respond to some of these messages because the messages targeted him by name, to ascertain why the sender thought he should submit a Camp Lejeune

4

claim, to no avail.

27. Over this same period, Plaintiffs received numerous telephone calls from a rotating series of numbers.

28. When Mr. Schirano answered the telephone calls, he was typically greeted with an artificial or prerecorded voice message inquiring as to his interest in submitting a Camp Lejeune claim.

29. Despite registering his cellular telephone number on the DNC registry, Mr. Schirano continued to receive similar text messages:



30. Like Mr. Schirano, Mr. Flores received, for example, the following text message on April 11, 2023:

5



31. Plaintiffs did not recognize the phone numbers associated with these text messages or telephone calls.

32. Each of these text messages and telephone calls was sent for the purpose of soliciting Plaintiffs to submit a claim regarding the pending Camp Lejeune water contamination mass tort litigation.

33. Plaintiffs did not previously inquire regarding submitting a claim for injury related to Camp Lejeune.

34. Plaintiffs are not, and were not, interested in submitting claims for injuries related to Camp Lejeune.

35. Plaintiffs did not serve at Camp Lejeune and did not live in the vicinity of Camp Lejeune during the relevant time period.

36. Mr. Schirano estimates that he has received approximately ten combined calls and text messages related to Camp Lejeune claims.

37. Mr. Flores estimates that he has received several dozen combined calls and text messages related to Camp Lejeune claims.

6

38. To investigate the identity of the sender of these text messages, Plaintiffs, through their counsel, retained a private investigator, who called the (866) 320-2598 and (844) 763-0291 phone numbers referenced in the text messages delivered to Plaintiffs' cellular telephone numbers.

39. When called, those phone numbers play a prerecorded voice message detailing that they are associated with Camp Lejeune claim submissions, and direct the caller to submit personal information for a call-back.

40. Shortly after calling those phone numbers, Plaintiffs' private investigator was called by a (210) 871-1320 phone number, requiring Plaintiffs' private investigator to respond to a number of interactive voice response ("IVR") prompts to confirm that he was seeking to submit a Camp Lejeune-related claim.

41. After Plaintiffs' private investigator indicated that he was seeking to submit a Camp Lejeune-related claim, he was greeted by a "Joe" of the "Camp Lejeune litigation team," which identified Milberg as the calling party.

42. After Plaintiffs' private investigator answered affirmatively to the Camp Lejeune screening questions, he was provided with a retainer agreement identifying Defendants to represent Plaintiffs' private investigator in submitting a Camp Lejeune claim.

43. Plaintiffs' private investigator did not sign the retainer agreement, and did not proceed any further with his submission.

44. Upon information and good faith belief, Defendants placed, or caused to be placed, materially identical phone calls and delivered materially identical text messages to numerous other persons across the country in an effort to generate additional leads or claims for submission in the pending Camp Lejeune mass tort litigation.

45. Plaintiffs did not give Defendants prior express consent to place, or cause to be

place, artificial or prerecorded voice messages to their cellular telephone numbers.

46. Plaintiffs did not give Defendants prior express written consent to send, or cause to be sent, telemarketing text messages to their cellular telephone numbers.

47. Furthermore, Defendants placed their calls and delivered their text messages to Plaintiffs' cellular telephone numbers for non-emergency purposes.

48. Upon information and good faith belief, Defendants placed their calls and delivered their text messages to Plaintiffs' cellular telephone numbers voluntarily.

49. Upon information and good faith belief, Defendants placed their calls and delivered their text messages to Plaintiffs' cellular telephone numbers under their own free will.

50. Upon information and good faith belief, Defendants had knowledge that they were using an automatic telephone dialing system, and an artificial or prerecorded voice, to place their calls to Plaintiffs' cellular telephone numbers.

51. Plaintiffs suffered actual harm as a result of Defendants' calls in that they suffered an invasion of privacy, an intrusion into their life, and a private nuisance.

52. Plaintiffs also suffered actual harm as a result of Defendants' calls and text messages because Plaintiffs were required to expend significant effort and time to obtain the identity of the callers, which Defendants deliberately obfuscated.

53. Upon information and good faith belief, Defendants, as a matter of pattern and practice, use an automatic telephone dialing system, and an artificial or prerecorded voice, to place calls, absent prior express consent, to telephone numbers assigned to a cellular telephone service.

54. Upon information and good faith belief, Defendants outsourced their outbound calling to Plaintiffs, and the members of the classes defined below, to external marketing or lead generation vendors or call centers.

55. Upon information and good faith belief, Defendants also outsourced their outbound text messaging to Plaintiffs, and the members of the classes defined below, to external marketing or lead generation vendors or call centers.

56. Upon information and good faith belief, Defendants knew that their external marketing or lead generation vendors were placing telephone calls and delivering text messages to consumers for the purpose of generating leads or claims regarding Camp Lejeune, and accepted the benefits of those calls by distributing and signing retainer agreements with the persons called by Defendants' vendors or call centers.

57. Upon information and good faith belief, to the extent that Defendants retained third parties to deliver the solicitation messages and telephone calls on their behalf, Defendants knowingly accepted the benefits of these unknown third parties' conduct.

58. Upon information and good faith belief, to the extent that Defendants retained third parties to deliver the solicitation messages and telephone calls on their behalf, Defendants cannot disclaim responsibility for these third parties' actions, because law firms are responsible for the content and methodology for their legal advertising, whether sourced in-house or externally.

## Class Action Allegations

59. Plaintiffs bring this action under Federal Rule of Civil Procedure 23, and as a representative of the following classes (collectively, the "Classes"):

**Prerecorded or Artificial Voice Class:**
All persons throughout the United States (1) to whom Milberg Coleman Bryson Phillips Grossman, LLC or Douglas H. Sanders Law Group, PLLC placed, or caused to be placed, a call, (2) directed to a telephone number assigned to a cellular telephone service, (3) in connection with which Milberg Coleman Bryson Phillips Grossman, LLC or Douglas H. Sanders Law Group, PLLC used an artificial or prerecorded voice, (4) from four years preceding the date of this complaint through the date of class certification.

**Federal Do-Not-Call Registry Class:**

All persons throughout the United States (1) to whom Milberg Coleman Bryson Phillips Grossman, LLC or Douglas H. Sanders Law Group, PLLC, delivered, or caused to be delivered, more than one text message within a 12-month period, promoting Milberg Coleman Bryson Phillips Grossman, LLC's or Douglas H. Sanders Law Group, PLLC's or their business partners' goods or services goods or services, (2) where the person's residential telephone number had been registered with the National Do Not Call Registry for at least thirty days before Milberg Coleman Bryson Phillips Grossman, LLC or Douglas H. Sanders Law Group, PLLC, delivered, or caused to be delivered, at least two of the text messages within the 12-month period, (3) within four years preceding the date of this complaint through the date of class certification.

**Sender Identification Class:**

All persons and entities throughout the United States (1) to whom Milberg Coleman Bryson Phillips Grossman, LLC or Douglas H. Sanders Law Group, PLLC, delivered, or caused to be delivered, more than one text message within a 12-month period, promoting Milberg Coleman Bryson Phillips Grossman, LLC's or Douglas H. Sanders Law Group, PLLC's, or their business partners' goods or services, (2) where the subject text messages did not state the name of the individual caller, the name of Milberg Coleman Bryson Phillips Grossman, LLC or Douglas H. Sanders Law Group, PLLC, and a telephone number or address at which Milberg Coleman Bryson Phillips Grossman, LLC or Douglas H. Sanders Law Group, PLLC may be contacted, (3) within four years preceding the date of this complaint through the date of class certification.

60. Excluded from the Classes are Defendants, their officers and directors, members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which Defendants have or had a controlling interest.

61. Upon information and belief, the members of the Classes are so numerous that joinder of all of them is impracticable.

62. The exact number of members of the Classes are unknown to Plaintiffs at this time, and can be determined only through appropriate discovery.

63. The members of the Classes are ascertainable because the Classes are defined by reference to objective criteria.

64. In addition, the members of the Classes are identifiable in that, upon information

10

and belief, their telephone numbers, names, and addresses can be identified in business records maintained by Defendants, and by third parties, including members of the Classes.

65. Plaintiffs' claims are typical of the claims of the members of the Classes.

66. As it did for all members of the Prerecorded or Artificial Voice Class, Defendants placed, or caused to be placed, telephone calls to Plaintiffs cellular telephone numbers using an artificial or prerecorded voice, absent prior express written consent.

67. Plaintiffs' claims, and the claims of the members of the Classes, originate from the same conduct, practice, and procedure on the part of Defendants.

68. Plaintiffs' claims are based on the same theories as are the claims of the members of the Classes.

69. Plaintiffs suffered the same injuries as the members of the Classes.

70. Plaintiffs will fairly and adequately protect the interests of the members of the Classes.

71. Plaintiffs' interests in this matter are not directly or irrevocably antagonistic to the interests of the members of the Classes.

72. Plaintiffs will vigorously pursue the claims of the members of the Classes.

73. Plaintiffs have retained counsel experienced and competent in class action litigation.

74. Plaintiffs' counsel will vigorously pursue this matter.

75. Plaintiffs' counsel will assert, protect, and otherwise represent the members of the Classes.

76. The questions of law and fact common to the members of the Classes predominate over questions that may affect individual members of the Classes.

77. Issues of law and fact common to all members of the Classes include:

   a. Defendants' conduct, pattern, and practice as it pertains to retaining third parties, agents, or vendors to place calls on their behalf for the purpose of generating leads or claims for the Camp Lejeune mass tort litigation;

   b. For the Prerecorded or Artificial Voice Class, Defendants' practice of placing, or causing to be placed, telephone calls to cellular telephone numbers using an artificial or prerecorded voice, absent prior express consent;

   c. For the Federal Do-Not-Call Registry Class, Defendants' practice of delivering text messages, for solicitation purposes, to telephone numbers already registered on the DNC Registry for more than thirty days without obtaining prior express written consent;

   d. For the Sender Identification Class, Defendants' practice of delivering solicitation text messages to telephone numbers where the subject text messages did not state the name of the individual caller, the name of either Milberg Coleman Bryson Phillips Grossman, LLC or Douglas H. Sanders Law Group, PLLC, and a telephone number or address at which Milberg Coleman Bryson Phillips Grossman, LLC or Douglas H. Sanders Law Group, PLLC may be contacted;

   e. Defendants' violations of the TCPA;

   f. Whether Defendants acted willfully and knowingly in violating the TCPA; and

   g. The availability of statutory penalties.

78. A class action is superior to all other available methods for the fair and efficient adjudication of this matter.

79. If brought and prosecuted individually, the claims of the members of the Classes would require proof of the same material and substantive facts.

80. The pursuit of separate actions by individual members of the Classes would, as a practical matter, be dispositive of the interests of other members of the Classes, and could substantially impair or impede their ability to protect their interests.

81. The pursuit of separate actions by individual members of the Classes could create a risk of inconsistent or varying adjudications, which might establish incompatible standards of conduct for Defendants.

82. These varying adjudications and incompatible standards of conduct, in connection with presentation of the same essential facts, proof, and legal theories, could also create and allow the existence of inconsistent and incompatible rights within the Classes.

83. The damages suffered by the individual members of the Classes may be relatively small, thus, the expense and burden to litigate each of their claims individually make it difficult for the members of the Classes to redress the wrongs done to them.

84. The pursuit of Plaintiffs' claims, and the claims of the members of the Classes, in one forum will achieve efficiency and promote judicial economy.

85. There will be no extraordinary difficulty in the management of this action as a class action.

86. Defendants acted or refused to act on grounds generally applicable to the members of the Classes, making final declaratory or injunctive relief appropriate.

## Count I
### Violation of 47 U.S.C. § 227(b)(1)(A)(3)
### On behalf of the Prerecorded or Artificial Voice Class

87. Plaintiffs repeats and re-alleges each and every factual allegation contained in paragraphs 1-86.

88. Defendants violated 47 U.S.C. § 227(b)(1)(A)(iii) by using an automatic telephone dialing system to place calls to Plaintiffs' cellular telephone numbers and the cellular telephone numbers of the members of the Automatic Telephone Dialing System Class without consent.

89. Defendants violated 47 U.S.C. § 227(b)(1)(A)(iii) by using an artificial or prerecorded voice in connection with calls it placed, or caused to be placed, to Plaintiffs' cellular telephone numbers and the cellular telephone numbers of the members of the Artificial or Prerecorded Voice Class without consent.

90. Specifically, Defendants placed, or caused to be placed, repeated telephone calls to be delivered to Plaintiffs' cellular telephone numbers, and the cellular telephone numbers of the members of the classes, using an artificial or prerecorded voice despite Plaintiffs and the members of the classes never authorizing Defendants to do so, all for the purposes of identifying new leads or potential claims for the pending Camp Lejeune litigation.

91. As a result of Defendants' violations of 47 U.S.C. § 227(b)(1)(A)(iii), Plaintiffs, and the members of the class, are entitled to damages in an amount to be proven at trial.

## Count II
### Violation of 47 U.S.C. § 227(c)(5)
### On behalf of the Federal Do-Not-Call Registry Class

92. Plaintiffs repeat and re-allege each and every factual allegation contained in paragraphs 1-86.

14

93. A text message is a "call" as defined by the TCPA. *See, e.g.*, *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 954 (9th Cir. 2009).

94. The TCPA's implementing regulation, 47 C.F.R. § 64.1200(c), provides that "[n]o person or entity shall initiate any telephone solicitation" to "[a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the federal government."

95. Section 64.1200(e) provides that §§ 64.1200(c) and (d) "are applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers."

96. Any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" may bring a private action based on a violation of those regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object. 47 U.S.C. § 227(c).

97. Defendants violated 47 C.F.R. § 64.1200(c) by initiating, or causing to be initiated, telephone solicitations to telephone subscribers such as Plaintiffs and the Federal Do-Not-Call Registry Class members who registered their respective cellular or residential telephone numbers with the DNC Registry, which is a listing of persons who do not wish to receive telephone solicitations that is maintained by the federal government.

98. Defendants violated 47 U.S.C. § 227(c)(5) because they delivered, or caused to be delivered, to Plaintiffs and members of the Federal Do-Not-Call Registry Class, more than one solicitation call or text message in a 12-month period in violation of 47 C.F.R. § 64.1200.

99. As a result of Defendants' violations of 47 U.S.C. § 227(c)(5) and 47 C.F.R. § 64.1200, Plaintiffs, and the members of the Federal Do-Not-Call Registry Class, are entitled to damages in an amount to be proven at trial.

### Count III
### Violation of 47 U.S.C. § 227(c)(5)
### On behalf of the Sender Identification Class

100. Plaintiffs repeat and re-allege each and every factual allegation contained in paragraphs 1-86.

101. A text message is a "call" as defined by the TCPA. *See, e.g.*, *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 954 (9th Cir. 2009).

102. The TCPA's implementing regulation, 47 C.F.R. § 64.1200(d), provides in relevant part that "[a] person or entity making a call for telemarketing purposes must provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted." *Id.* at § 64.1200(d)(4).

103. Section 64.1200(e) provides that §§ 64.1200(c)-(d) "are applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers."

104. Any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" bring a private action based on a violation of those regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object. 47 U.S.C. § 227(c).

105. Defendants violated 47 C.F.R. § 64.1200(d)(4) by initiating, or causing to be initiated, telephone solicitations to telephone subscribers such as Plaintiffs and the Sender

16

Identification Class members while failing to "provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted."

106. Defendants therefore violated 47 U.S.C. § 227(c)(5) because they delivered, or caused to be delivered, to Plaintiffs and members of the Sender Identification Class, more than one solicitation call or text message in a 12-month period in violation of 47 C.F.R. § 64.1200(d)(4).

107. As a result of Defendants' violations of 47 U.S.C. § 227(c)(5) and 47 C.F.R. § 64.1200(d)(4), Plaintiffs, and the members of the Sender Identification Class, are entitled to damages in an amount to be proven at trial.

## Prayer for Relief

WHEREFORE, Plaintiffs prays for relief and judgment, as follows:

a. Determining that this action is a proper class action;

b. Designating Plaintiffs as a class representative of the proposed Classes under Federal Rule of Civil Procedure 23;

c. Designating Plaintiffs' counsel as class counsel under Federal Rule of Civil Procedure 23;

d. Adjudging and declaring that Defendants violated 47 U.S.C. § 227(b) and 47 U.S.C. § 227(c)(5);

e. Enjoining Defendants from continuing their violative behavior, including continuing to deliver solicitation phone calls to telephone numbers without obtaining prior express consent;

f. Awarding Plaintiffs and the members of the Classes damages under 47 U.S.C. § 227(b) and 47 U.S.C. § 227(c)(5)(B);

g. Awarding Plaintiffs and the members of the Classes treble damages under 47 U.S.C. § 227(b)(3)(C) and 47 U.S.C. § 227(c)(5)(C);

h. Awarding Plaintiffs and the members of the Classes reasonable attorneys' fees, costs, and expenses under Rule 23 of the Federal Rules of Civil Procedure;

i. Awarding Plaintiffs and the members of the Classes any pre-judgment and post-judgment interest as may be allowed under the law; and

j. Awarding such other and further relief as the Court may deem just and proper.

**Demand for Jury Trial**

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs demand a trial by jury of any and all triable issues.

Date: July 18, 2023

*/s/ Alex D. Kruzyk*
Alex D. Kruzyk* (to seek admission *pro hac vice*)
Bryan A. Giribaldo * (to seek admission pro hac vice)
**PARDELL, KRUZYK & GIRIBALDO, PLLC**
501 Congress Avenue, Suite 150
Austin, Texas 78701
Tele: (561) 726-8444
akruzyk@pkglegal.com
bgiribaldo@pkglegal.com

Todd M. Friedman* (to seek admission *pro hac vice*)
Adrian R. Bacon* (to seek admission *pro hac vice*)
The Law Offices of Todd M. Friedman, P.C.
21031 Ventura Blvd, Ste. 340
Woodland Hills, CA 91364
Tele: (323) 306-4234
tfriedman@toddflaw.com
abacon@toddflaw.com

*Counsel for Plaintiffs and the proposed classes*